Thank you. If it pleases the court, my name is Michael Bigelow and I represent Stephen Clark, petitioner and appellant in this matter. Assuming for the moment that you agree with me that trial counsel was ineffective and if we want to discuss it, I'll be more than happy to. But what I'd really like to talk about and what I'm sure that you would probably like to hear about is prejudice and why it made a difference that trial counsel did not bother to do DNA testing when that was really critical to his defense. By not doing DNA testing, he didn't know whether the semen donor was in fact Mr. Diaz or was not Mr. Diaz. If he'd done DNA testing and it had proved negative, we wouldn't be here. The case would probably be over. But let's assume for the moment that he had, in fact, done DNA testing. And the sample, by the way, as we know, was destroyed or lost to no fault of Mr. Diaz. Probably the government destroyed it somewhere after the trial. But that's not at issue. I guess my main concern is what the prevailing norm was at the time of the trial in terms of the use of DNA. I mean, today, no one would have any question about that. I know the evidence shows that Mr. Blaser, I guess, the expert in the case, indicated that there were several well-accepted methods at the time. And indeed, Mr. Lipsmeyer testified in 1994 he went to a class taught by Mr. Blaser. But other than that, is there any evidence in the record that suggests that this was expected of any competent counsel in this kind of a case? No, there's nothing in the record that I think that the timeframe lends its – other than Mr. Blaser. And Mr. Blaser is a well-recognized expert. I mean, his history goes back to the O.J. He was the DNA guy in O.J. and has been a DNA guy in – If it doesn't fit, you must acquit, right? That wasn't him. That was – I know that was somebody else, but that was the trial. Yeah. Yeah. But was it the norm? I don't know that it makes any difference that it was the norm. It was – and I honestly don't. I understand the Court's question, but I don't think it makes any difference. It was available to him at the time, and he knew it was available to him at the time. He said so in his deposition. But that's not really the point either. He didn't have a defense. It didn't matter. It could have been the norm. It could have been staring him in the face. He wouldn't have paid any attention to it. What he did at trial was absolutely inexcusable as far as I'm concerned. His client testified, and he knew his client was going to testify. In spite of what he said in the deposition and in spite of what the magistrate judge, district court judge, found, he knew his client was going to testify. There was no penetration. He flat out lied in his deposition. It's in the record. I make that comparison. He didn't have a defense. He thought about his Mayberry defense, driving to work before closing argument. He sets up a straw man to knock it down. His client says, I didn't penetrate. I didn't have sex with that woman. He said, ah, don't believe him. I suppose it could have happened that way, but don't believe him. It's consent and it's Mayberry consent. Now that is absolutely inexcusable. He's admitting guilt so that he can knock down the admission of guilt with his ridiculous Mayberry defense, which wasn't applicable in the first place. There was no evidence of mistake. And in argument, he doesn't even argue consent. There's no argument about it. He's making it up as he goes along. There's a difference between tactics and what is expected of counsel, competent counsel. Would you agree? I would. What is expected of counsel is what is available to counsel. What's available to counsel. I'm answering your question. I'm sorry. I didn't mean to come out as strongly as it did. I know you're enthusiastic. We appreciate that. What was available to counsel was DNA testing at the time. Okay. But I want you to give me a comparison here. As I understand it, you've got somebody with a very, very low IQ, and that's in the case of the mentally retarded by all standards and tests. Absolutely. He claimed didn't have sex with her. She they met in an area that was used by prostitutes. This woman had a whole bunch of unused condoms in her purse. I mean, the reality is to say that there was, if there was sex, it was consensual was not a ridiculous defense, was it? It wasn't a ridiculous defense if it comported with the facts. If he had done testing. I get your point about DNA would have helped. No. Well, it would have helped, but it would have helped in another realm. If he had done testing, and the testing was conclusively positive to the client, and I'm loath to do this, but I've done hundreds of jury trials, and you take irrefutable evidence to a client who is in abject denial, and you say, look, this is what the situation is. There is clear evidence. Now, are you absolutely certain you didn't penetrate? The answer becomes usually yes, I did. I did the crime. So what do you do in a situation like that? Consent is a good issue. I still deny that I had sex with her. You convince the client not to take the stand. He has a right not to take the stand. He has a right to testify. Well, you try to convince the client not to take the stand. And usually it works, Your Honor. Usually it works. But the point is that becomes a tactical decision at that point. Then you have the information. Then you have the information. He didn't have the information. He didn't know where to go. He was flying from the seat of his pants, and he was flying in a fog. He didn't know where he was going. But if counsel had had a positive DNA test, wouldn't he have been foreclosed from even putting his client on the stand at that point, knowing that his client was going to deny having sex with the alleged victim? He wouldn't have been foreclosed from putting his client on the stand. There are a whole lot of ethical issues that are involved in that, but he would have had to do something. And it's been a long time since I've looked at that issue. I understand the Court's point, and I agree with the Court, that there are parameters. But the client, it is unlikely, in my experience and opinion, in this particular case, given this particular record, it's unlikely that this particular client would have taken the stand and testified. The fact of the matter is, my reading of the record, remember, the PGM testing, the serological testing that was done, was inconclusive, very inconclusive, which leads Blaser to the conclusion that it would have really helped. What happens if we agree with you and we reverse based on an IAC? What happens? There's no more DNA's gone. Does he walk? I don't think so. That's a decision made by... Well, I understand it's a prosecutorial decision. I'm just asking for your view. On my view? Could they convict him under the circumstances? I don't think that they would convict him, honestly. Could they convict him? Yes, they could. They did on the same evidence. They did on the same evidence. They could convict him. They could obtain them. They could convict him. But I haven't looked at it from that perspective, and I apologize. I suppose that I should have. You want to think about it while you're preparing for rebuttal? Sure. Why not? Okay. Thank you very much for that fine argument. And I apologize. It's nice to see abled counsel get excited every now and then. Okay. Mr. Bowers for the government, please. Thank you, Your Honor. I'm excited as we speak. May it please the Court, Barton Bowers, Deputy Attorney General for the warden. Brief point on the performance prong. Mr. Bigelow spent a lot of time attacking the performance of trial counsel, Mr. Lipmeier, but the district court here, in fact, found Mr. Lipmeier's testimony to be credible. And, of course, this Court, as a reviewing court, normally affords deference to credibility determinations by the lower court. What is it, an abuse of discretion? Is that their standard of review? Well, this Court normally accepts creditability determinations, but, of course, the governing standard of review is deference to the state court decision which denied this claim on the merits. You're talking about an AEDPA standard. Yes. We are in an AEDPA case. Now, regardless of the standard, the real critical issue in this case is prejudice. And the fact is that he can't show it. And he can't show it because the evidence was destroyed. He's never made an allegation of bad faith. Isn't that a different issue, counsel? I mean, let's walk through this. If, you know, we won't go for a moment with what the defendant said, but the reality is he claimed this sex never happened here. If a DNA test had been done and it had been shown conclusively with the DNA that the sperm in the victim, in quotes, was not his, wouldn't that conclusively have basically ended the trial at that point? No, it would not. Okay. And why is that? Okay. Because that evidence, if it were shown, and that's a big if, Right. would only have shown that she had had recent sex with a different man. Mm-hmm. And that only would have mattered because she testified on her examination that she hadn't had sex with anyone else within the last 72 hours. Right. So it would have tended to discredit her testimony. But her testimony was already discredited. Mm-hmm. I mean, this is a woman, and, Judge, you have recited many of the facts that undermined her credibility. And the jury heard all those facts, and yet they still chose to convict Mr. Diaz. But I say that's a big if because, of course, he can't show what DNA testing would have revealed. Now, clearly established law under Osborne is that DNA testing has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty. And it's equally, if not more plausible, that DNA testing would have shown that this semen did belong to Mr. Diaz, in which case it wouldn't have changed the outcome of the trial. And I think what I just heard Mr. Bigelow suggest is that that result would have caused the defendant to change his testimony, testify differently. That's tantamount to admission that his client committed perjury when he did testify. In any event, his client did testify that he had some sort of sex with the victim in this case. And so under the circumstances, because the evidence has long been destroyed, there's no way for him to show prejudice because he can't show a likelihood of a different result. And unless the Court has any further questions, I am prepared to submit them. Is there anything in the record about whether or not Mr. Lipsmeyer was appointed or retained? He was an appointed attorney. Appointed counsel don't have always the capability to snap their fingers and get a DNA test. It's not as easy, certainly wouldn't have been in 1996 as it may be today. Well, I really don't have a question other than that he was appointed. Correct. And what I can certainly agree with is that appointed counsel often do not have the resources, unfortunately, to mount full-scale defenses in every single case. But what I can say also is that while Mr. Lipsmeyer may not have been a Perry Mason or a Mike Bigelow, for that matter, his efforts did help the jury acquit on three felony counts against his client. So I gather the government contests both the – both prongs of Strickland in this case, right? Yes. And the district court found that he hadn't met his burden on either prong. But, of course, the critical fact of the government is he can't show prejudice because the evidence is long gone. One thing that bothers me is that if the defense was to be lack of consent, it would seem he would have argued that in the final argument, and he didn't. Judge, I agree that the defense closing argument was not a model of clarity. Well, it isn't even clarity. It's the fact that he chose that as a defense and then did not do it at all. Well, I disagree. He didn't use the word consent, but he pointed out a couple of times in his argument that the victim was a prostitute. And that's why he made a statement, this is an act of prostitution. Those were defense counsel's words at page 311 of the excerpts. That was the thrust of his argument, even if he didn't use the magic word of consent. Yeah, but I see that you could say that he made some sort of an argument. But if that is the basis of his defense, is that there was consent, he certainly should have mentioned something about it. And he knew that that was not the basis that the defendant was asserting. Well, respectfully, he didn't himself believe his client, and I don't think he believed it based on the evidence against his client. Now, I'm not saying that the argument was above criticism, but they weren't making an argument that his argument at trial was incorrect. Why would he not have believed his client? Well, among other things, his client's statement to the detective that he did have sex with him. His description of sex was not penetration, it was something else. That was his testimony at trial, but I think under all the circumstances, it was a reasonable argument to make, given the evidence at trial. Would you just address this point? A minute ago, if I understood you correctly, you said that the appellant can't show prejudice because, if I understood you to say this, because the evidence is long gone. I'm losing the connection on that. Why does the fact that the evidence is long gone have anything to do with whether he can show prejudice? Because he can't show that the results of any testing would have been favorable to him. In other words, you're saying because it's speculative, we don't know, right? And speculation as to what an expert may have said cannot establish prejudice. That was said by this Court in Grigsby. Okay. Isn't that pretty disturbing, though? The evidence was destroyed, and so, therefore, the defendant didn't destroy it, but he's foreclosed, even though it might have been a very serious error and the government destroyed the evidence that could have established that and we're saying, well, too bad, we destroyed it. The evidence was destroyed after his trial where he was found guilty. He's never made an allegation of bad faith destruction of the evidence, and this Court would say too bad by compulsion of the United States Supreme Court, which has set forth the test in Strickland that he must show prejudice. It's his burden to show that, and if this Court were to entertain every claim of ineffective assistance on the basis of, well, it could have shown something differently, that would undermine Strickland and that would undermine the criminal justice system as a whole. How about the government having destroyed the evidence, though? If he had a claim of destruction of evidence to make, he should have made it. He never made it. Well, he didn't need to claim it. It was destroyed. After he got a trial on the merits and where he was found guilty of some of the counts against him. But the failure to get DNA is not the only allegation of ineffective assistance to counsel in this case, is it? Specifically speaking, the failure to subject the biological evidence to DNA testing, that is the only claim of ineffective assistance here, yes. Well, I've heard complaints about the argument and lack of preparation, but you say the issue is the DNA only. That's right. We've heard those arguments today, but that is his single claim that he's made. Unless there's any further questions, I see my time's up. Thank you very much. Thank you very much. Mr. Bigelow. I think that that is unfortunate. I didn't really have much of a chance to deal with that issue, but that was what the COA was granted on your end. Can you help me with the issue of speculative result? The government is correct, is it not, that in EDPA cases, if you're just speculating what the DNA tests would have shown, you can't get relief on the prejudice prong of Strickland? To one extent, no, I disagree with that. Because at least in this case, I disagree with it. Because not knowing the DNA result denied trial counsel an opportunity to argue and present a consistent defense. That's what lost for this guy. I appreciate that. But the reality is, whether one agrees or not with EDPA, the reality is Congress passed it, and the Supreme Court interpreted it. And it made it very clear that in Strickland, a tactical decision, you're stuck with it, basically. As long as it's not incompetent, basically, under the rules of professional conduct. And if a failure to pursue a particular avenue of defense is not pursued, and there's no evidence that shows what would have happened, i.e., that it's speculative, is not successful, either under our jurisprudence or the Supreme Court's, is it? It doesn't have to be, I agree, speculative, yes. But it doesn't have to be absolute. No, nothing's absolute. Correct. And I'm arguing that the answer here is that the result is not speculative. There is a reasonable probability that the result would have been different. Remember, the jury was out for three days in this case. That's actually a fairly long time in a simple law. They got three of the counts thrown out. And got three of the counts thrown out in this particular instance because he didn't have the answer. He is forced to call his client a liar during closing argument because he didn't do the testing, regardless of what that testing would have been or what the results would have been. Well, we thank you both, gentlemen, for your excellent argument. I do have one question. Certainly, Your Honor. What is your view as to how we could show that the deficiency in the attorney was prejudicial? Because he did not do the testing, he did not have the tools to go to court. He didn't know what the answer was. And his client, and actually I believe his client, his client said there was no penetration. So he could not have been the semen donor to the vaginal swabs. Yet trial counsel insisted over his client's objection, insisted that, oh, yes, those you are the semen donor with respect to those vaginal swabs. I've never heard of it referred to in quite that way. The semen donor. Yeah. Okay. Thank you very much. All right. Okay. Thank you very much for the argument in Diaz versus Clark. That case is submitted.
judges: Todd, Hug, Smith M.